Opinion
LAGER, J.
Plaintiff and appellant Avi Peretz (Peretz) appeals from the trial court’s order awarding attorney fees to defendant Kenneth Bernard (Bernard).[1]
Factual and Procedural History
On April 21, 2003, Peretz filed a complaint in unlawful detainer against Bernard. According to the record, Peretz, as landlord, and Bernard, as tenant, entered into a lease agreement on February 1, 2002, for the lease of an apartment for $318.27 per month. Bernard allegedly failed to pay the rent when it was due, was served with a three-day notice to pay rent or quit, and failed to vacate following the expiration of the three-day period. Attorney fees were requested in the complaint.
On April 29, 2003, Bernard filed a general denial. On May 1, 2003, the Legal Aid Foundation of Los Angeles (LAFLA) became the attorney of record for Bernard.
A court trial took place on May 16, 2003. The trial court entered judgment for Bernard after concluding that payment was made in accordance with the lease.
On June 16, 2003, Bernard filed a motion for attorney fees pursuant to his lease. Peretz argued in his opposition that because LAFLA is funded by the Legal Services Corporation (LSC), it is precluded under federal law from receiving the requested award.
On July 11, 2003, the trial court granted Bernard’s motion for attorney fees and awarded fees in the amount of $1,860. Peretz filed a timely notice of *Supp. 4 appeal on July 23, 2003. LAFLA was assigned defendant’s rights in the judgment and has been designated the respondent on this appeal. This appeal is directed solely to the validity of the award of attorney fees.
Contentions on Appeal
Peretz argues that California Civil Code section 1717—which he concedes permits the award of the attorney fees—is preempted by federal law. He primarily relies upon an LSC-promulgated regulation, 45 Code of Federal Regulations (hereafter Regulation) part 1642.3 (2003), which provides in relevant part: “[N]o recipient [of LSC funding] or employee of a recipient may claim, or collect and retain attorneys’ fees in any case undertaken on behalf of a client of the recipient.” Attorney fees are defined as “an award to compensate an attorney of the prevailing party made pursuant to common law or Federal or State law permitting or requiring the awarding of such fees ____” (Reg. § 1642.2(a) (2003).)
LAFLA concedes that it is a “recipient” of LSC funds but urges that Regulation part 1642.3 does not pertain to a contractually created right to attorney fees, and applies only to claims created by substantive statute or by common law doctrine. LAFLA argues that LSC agrees with its interpretation of the Regulation, citing a November 26, 1997, letter from LSC staff to the San Francisco Neighborhood Legal Assistance Foundation. LAFLA also urges that this court lacks authority to take cognizance of the defense to attorney fees asserted. It points to federal law, which it says so dictates, and to its supremacy over any contrary California law under article VI, section 1, clause 2, of the United States Constitution, commonly referred to as the supremacy clause.
Analysis
LSC is a nonprofit corporation created by the Legal Services Corporation Act of 1974 (Act) (Pub L. No. 93-355 (July 25, 1974) 88 Stat. 378 (codified as amended in 42 U.S.C. § 2996 et seq.)). It administers grants to local organizations—such as LAFLA—that provide free legal assistance to indigents in noncriminal matters. (See Act § 1006(A) et seq.; 42 U.S.C. § 2996b(a).) While LSC is not a federal agency, it has many agency-like powers and is generally treated by courts as akin to one. It is authorized to adopt regulations to implement the Act. (See generally Texas Rural Legal Aid v. Legal Services Corp. (D.C.Cir. 1991) 291 U.S. App. D.C. 254 [940 F.2d 685, 689-690].)
Three fundamental principles guide our analysis: (1) the supremacy clause of the United States Constitution requires state law to yield to contrary *Supp. 5 federal statutes and regulations where Congress or the administrative agency expressly or impliedly intended that result; (2) an administrative agency’s interpretation of its governing law and its own regulations is generally given great weight by courts; and (3) courts will not enforce a contract that sanctions illegality. (See Beneficial Nat. Bank v. Anderson (2003) 539 U.S. 1, 9-10 [156 L.Ed.2d 1, 123 S.Ct. 2058].)
Enforcement of the terms of the Act and regulations promulgated thereunder is vested in LSC. (42 U.S.C. § 2996e.) The statutory and regulatory scheme is one of oversight; LSC oversees grant recipients and disciplines their improper use of funds, and Congress oversees LSC. (Grassley v. Legal Services Corp. (S.D.Iowa 1982) 535 F.Supp. 818, 824 [analyzing congressional intent].) LSC has created a means by which alleged violations of the Act or its regulations can be brought to its attention by interested persons and a means by which it can take disciplinary action against an offending recipient. (Reg. §§ 1618.3, 1618.5 (2003).) Violation of the Regulation can result in termination of financial support from LSC. (Reg. § 1618.5 (2003).)
LSC’s jurisdiction to enforce the Act and its regulations is exclusive. The Act and LSC regulations do not create a private right of action. Nor do they create an obligation enforceable against a grant recipient in private litigation. (See McManama v. Lukhard (4th Cir. 1980) 616 F.2d 727, 729-730 [LSC regulation does not apply in civil action]; Harris v. Tower Loan of Mississippi, Inc. (5th Cir. 1980) 609 F.2d 120, 124 [“Even if there was a failure to comply with the regulations, the proper recourse would be to complain to [the LSC]; not resistance to a fee award. 45 C.F.R. 1618.3.”]; Grassley v. Legal Services Corp., supra, 535 F.Supp. at p. 818 [no private right of action]; Ex parte Mitchell (Ala. 1981) 395 So.2d 51, 52 [motion to disqualify petitioner’s attorney for his alleged violation of the Act; “the Judge lacks jurisdiction to determine the issue raised by Defendant .... Absent some other ground for disqualifying Petitioner’s attorney, the Judge has a duty to permit Petitioner’s attorney to continue his representation in this matter.”].)
It warrants emphasis that the mere fact that a statute or regulation exists does not create a claim or defense, or the right to assert a claim or defense in a particular forum. “ ‘Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition who may enforce them and in what manner.’ ” (Grassley v. Legal Services Corp., supra, 535 F.Supp. at p. 827; see also Southern Pac. Transp. Co. v. Commercial Metals Co. (1982) 456 U.S. 336, 344-345 [72 L.Ed.2d 114, 102 S.Ct. 1815] [whether a regulation provides a defense in a civil action is determined by an examination of legislative intent and other factors].)
*Supp. 6 No intent to permit private enforcement by affirmative claim or defense (here, a “defense” to a motion) appears in the language or history of the Act, or LSC regulations. Their language and history reveal an intent for the LSC to oversee use of grant money, not creation of third party rights.[2] (Grassley v. Legal Services Corp., supra, 535 F.Supp. at pp. 826-827.)
Regulation part 1618.1 (2003) explains that the intent was not to create a defense: “In order to insure uniform and consistent interpretation and application of the Act, and to prevent a question of whether the Act has been violated from becoming an ancillary issue in any case undertaken by a recipient, this part establishes a systematic procedure for enforcing compliance with the Act.” (Italics added.)[3]
In short, while the Regulation undoubtedly has an in terrorem effect on the exercise of the ability to claim attorney fees, its violation can be redressed only by LSC, and only pursuant to the disciplinary scheme created by its regulations. Congressional and regulatory history dictate that the Regulation not be used by a court to provide a defense to a motion for attorney fees. Peretz’s sole remedy is to complain to LSC about LAFLA’s alleged violation of the Regulation. If LSC does not act as Peretz desires, he may be able to seek judicial review of LSC’s decision.
Even if a party were able to assert a defense to a motion for attorney fees based upon the Regulation, it would be construed in the manner urged by LAFLA. In a November 26, 1997, opinion letter, LSC’s Compliance and Enforcement Division stated: “We find your argument convincing that an LSC recipient may claim and collect attorneys’ fees pursuant to a contract between the parties to a lawsuit.” It reasoned that, even if general procedural statutes are involved in its enforcement, an award of contractually provided attorney fees is pursuant to contract, not statute or common law.
*Supp. 7 According to plaintiff, an earlier program letter prepared by LSC’s staff is inconsistent, and renders LSC’s interpretation of the Regulation uncertain. We disagree. The program letter is dated August 7, 1997, and addresses the general ban on recipients seeking an award of attorney fees permitted by statutory or common law right. When the argument was later considered for recognizing a distinction between contractually permitted attorney fees and those permitted by statute or the common law, LSC found it “convincing.” LSC continues to adhere to the interpretation of its own regulations set forth in the November 26, 1997, letter. (See LSC Off. of Legal Affairs, External Opn. Nos. EX 2003-1010 (July 9, 2003) & EX 2003-1014 (Oct. 27, 2003); see also LSC Web site at <http://www.lsc.gov/> [as of Aug. 4, 2004].) This court would not deviate from that reasonable interpretation. (See Texas Rural Legal Aid v. Legal Services Corp., supra, 940 F.2d 685, 690.)
The order of the trial court awarding attorney fees is affirmed.
Wasserman, Acting P. J., concurred.

 On June 24, 2004, this court issued an order substituting the Legal Aid Foundation of Los Angeles “as party Defendant as Defendant’s assignee,” following the death of defendant Kenneth Bernard on or about March 10, 2004. The Legal Aid Foundation of Los Angeles was assigned defendant’s rights in the costs judgment and has been designated the respondent on this appeal.

 The Regulation was adopted by LSC in response to section 504(a)(13) of the Omnibus Consolidated Rescissions and Appropriations Act of 1996 (Pub.L. No. 104-134 (Apr. 26, 1996) 110 Stat. 1321). (62 Fed.Reg. 25862 (May 12, 1997).) Section 504 provides in relevant part: “(a) None of the funds appropriated in this Act to the Legal Services Corporation may be used to provide financial assistance to any person or entity ... H]. • • HD (13) that claims (or whose employee claims), or collects and retains, attorneys’ fees pursuant to any Federal or State law permitting or requiring the awarding of such fees; . . .” This appropriations provision does not imply that Congress intended that a private right of action or defense be created. (See Grassley v. Legal Services Corporation, supra, 535 F.Supp. at p. 826.)

 Additional considerations suggest that no private rights were created by the Regulation. It was not intended to especially benefit the class of which plaintiff is a member, i.e., a plaintiff in privity of contract with a prevailing defendant receiving LSC paid representation. The Regulation does not protect the public from acts of moral turpitude. (See Cort v. Ash (1975) 422 U.S. 66, 81-84 [45 L.Ed.2d 26, 95 S.Ct. 2080] [setting forth criteria from which legislative intent can be discerned]; Vick v. Patterson (1958) 158 Cal.App.2d 414, 417 [322 P.2d 548] [administrative rule held not to provide a defense to a third party in a civil action, but to be enforceable only by disciplinary proceeding against the plaintiff].)